United States District Court
Southern District of Texas
**ENTERED**
July 11, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| GUADALUPE GARCIA AL-DAHWA, § § | |
| Plaintiff. § § | |
| V. § | CIVIL ACTION NO. 4:23-cv-02010 |
| § § | |
| AMERICAN MULTI-CINEMA, INC., § § | |
| Defendant. § | |

## OPINION AND ORDER

Defendant American Multi-Cinema, Inc. ("AMC") has filed a Motion to Exclude and/or Limit the Testimony of Jason English ("Motion to Exclude"). Dkt. 19. For the reasons detailed below, the Motion to Exclude is **DENIED**.

## BACKGROUND

This is a premises liability case. Plaintiff Guadalupe Garcia Al-Dahwa ("Al-Dahwa") alleges she suffered personal injuries as the result of a trip-and-fall accident in the parking lot of a movie theater owned by AMC. More specifically, Al-Dahwa, who says she suffers from a physical disability, contends she tripped and fell in a "designated walkway because the concrete in the walking area was cracked, broken, and not level." Dkt. 1-2 at 3. Al-Dahwa further alleges "[t]he walkway designated for disabled individuals to utilize was unreasonably dangerous because [AMC] failed to inspect, maintain and repair the area." *Id*. According to the live pleading, the walkway did not comply with the American with Disabilities Act ("ADA"), the Texas Accessibility Standards ("TAS"), and other building codes because of the jutting concrete, which resulted in an abrupt elevation change of the walking surface. Al-Dahwa also avers that AMC failed to warn her of the dangerous condition.

Al-Dahwa has designated Jason English ("English") as a testifying expert witness. The opinions English intends to offer in this case are set forth in a 20-page expert report. *See* Dkt. 19-3. AMC summarizes those opinions as follows:

1. The principal causative factor related to [Al-Dahwa's] fall was the presence of an abrupt vertical rise and broken concrete disrepair in the accessible route providing access to the disabled parking area, creating an unreasonable hazard for pedestrians and individuals using rolling devises [sic] such as wheelchairs, walkers, rollators, etc.;
2. The presence of this fall hazard created an unreasonably dangerous condition certain in time to produce incidents;
3. [AMC] knew or undeniably should have known of its responsibility to exercise reasonable care to establish, monitor, and maintain the exterior common area walkways of their premises reasonably free of hazards likely to cause serious physical harm to persons present on the property, and ultimately failed in its responsibility;
4. The area of disrepair should have been reasonably discovered by [AMC] and timely corrected, and until such repairs could be made, adequate warnings used to mark the hazard;
5. [AMC] failed to establish and/or properly implement an adequate premises safety program to identify these types of hazards on its property, or otherwise respond appropriately for the protection of those on the property;
6. [AMC] knew or should have known of various codes, standards, and other authoritative literature that recognizes fall hazards associated with small abrupt changes in elevation in walkways; and
7. [AMC] failed to eliminate the fall hazard by timely correcting the issue and warning of the issue until such repair could be completed.

Dkt. 19 at 4–5.

AMC asks me to preclude English from testifying at trial for two reasons. First, AMC insists that English's proffered opinions will not help the jury understand the evidence or determine a fact issue. Second, AMC argues that the probative value of English's opinions are substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Before I address

these arguments, I will briefly describe the applicable standards a district court must consider when deciding whether to allow an expert witness to testify at trial.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony and reports. It provides that expert testimony will be allowed if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

District courts have "a gatekeeping role" in making determinations as to the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). As a preliminary matter, a district court must determine whether the proffered witness qualifies as an expert "by virtue of his knowledge, skill, experience, training, or education." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quotation omitted). If the expert is qualified, the "overarching concern" becomes "whether the testimony is relevant and reliable." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). To be reliable, expert testimony must "be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (cleaned up). To be relevant, "the expert's reasoning or methodology [must] be properly applied to the facts in issue." *Id.* (quotation omitted).

I possess broad discretion in deciding whether to admit expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Puga*, 922 F.3d at 294. A

district court's role "is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Id.* As the United States Supreme Court explained: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga*, 922 F.3d at 294 (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment).

Finally, even if an expert is qualified and his opinions are relevant and reliable, his testimony may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403. When an expert witness is called to testify, "a certain patina attaches to an expert's testimony unlike any other witness; this is 'science,' a professional's judgment, the jury may think, and give more credence to the testimony than it may deserve." *United States v. Hines*, 55 F. Supp. 2d 62, 64 (D. Mass. 1999). Thus, district courts enjoy wide latitude when determining whether an expert's testimony should be admitted under Rule 403. *See Daubert*, 509 U.S. at 595 ("Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses.").

## ANALYSIS

To determine whether the Motion to Exclude should be granted, I must first decide whether English is qualified to render opinions on premises safety and safety engineering. Next, I must determine whether English's opinions are reliable and relevant to the issues in dispute in this case. If English is qualified and his opinions are reliable and relevant, I must then address AMC's contention that such

testimony's probative value will nonetheless be substantially outweighed by the danger of unfair prejudice.

A. **ENGLISH'S QUALIFICATIONS**

AMC does not challenge English's qualifications. Nonetheless, I briefly recount English's credentials: English is a licensed Professional Engineer, holding a B.S. in Industrial Engineering with a specialty in Systems Safety Engineering and an M.S. in Safety Engineering from Texas A&M University. English has also completed post-graduate coursework in the Department of Architecture at Texas A&M , focusing on the evaluation and design of means of egress components. He is a member of the American Society of Safety Professionals, Human Factors and Ergonomics Society, National Safety Council, and International Code Council. Since 1999, English has worked as a professional engineering consultant, primarily consulting in the field of safety engineering, including workplace safety, premises safety, product safety, safety management, and human factors/ergonomics. He also serves on several safety standard development committees for the American Society of Testing and Materials International.

The Fifth Circuit has held that "[a]s long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function. After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999). Given English's education and relevant experience, there is some reasonable indication of English's qualifications as a retail safety expert.

B. **RELIABILITY AND RELEVANCE OF ENGLISH'S OPINIONS**

AMC seeks to exclude English's testimony on the ground that his opinions will not assist the jury in deciding the premises liability issues in dispute. To prevail on her premises liability claim, Al-Dahwa must establish four elements:

> (1) [AMC] had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) [AMC] failed to take reasonable care to reduce or eliminate

5

the risk; and (4) [AMC]'s failure to use reasonable care to reduce or eliminate the risk was the proximate cause of [Al-Dahwa's] injuries.

*Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014).

In AMC's view, this is a relatively simple and straightforward case: Al-Dahwa "contends that she tripped and fell over a clearly visible area of concrete that was cracked and unlevel." Dkt. 19 at 8. According to AMC, "[t]here are no complex scientific or technical issues wherein the jury would need expert assistance to understand the issues in this case." *Id.* AMC adds:

> Photographs of the concrete area in question where [Al-Dahwa] fell, along with [Al-Dahwa]'s testimony regarding how the incident occurred, will be available to the jury to view and consider. The jury does not need expert testimony to explain what the evidence shows as the jury has the common sense and knowledge to determine whether the cracked and uneven concreate [sic] created an unreasonable risk of harm, whether [AMC] knew or should have known that the condition created an unreasonable risk of harm, whether [AMC] used reasonable care to reduce or eliminate the risk, and whether such condition proximately caused [Al-Dahwa]'s damages. As a result, English's opinions should be excluded in this matter.

*Id.*

In response, Al-Dahwa argues that English's testimony will assist the jury because his knowledge and experience on the issues relevant to the case are beyond that of the average juror. It is Al-Dahwa's contention that

> [t]his case involves a trip and fall in an area governed by federal and state regulations and industry-accepted and widely used standards for safe walking surfaces in areas used by handicapped or mobility-impaired invitees. . . . English's knowledge and experience related to the safety and accessibility codes applicable to where the incident occurred, safety engineering, when and how falls occur on premises, human visual characteristics while walking, walking surface literature, and the specific testimony and documents in this case, are beyond the common knowledge of the typical juror and will help the trier of fact understand all the evidence the Court will task them with digesting to determine the fact issues . . . in this case.

Dkt. 23 at 6–7.

In my view, the subjects that English intends to address at trial are directly relevant to the elements of Al-Dahwa's premises liability claim. By way of example, English plans on testifying that pedestrians, like Al-Dahwa, frequently fail to see hazards in front of them as they walk. This opinion, which English bases on published human factors literature, is relevant to both the second element (whether the uneven surface on the walkway posed an unreasonable risk of harm) and the fourth element (proximate causation). *See Manning v. Walgreen Co.*, 638 F. Supp. 3d 730, 735 (S.D. Tex. 2022) (permitting English to testify on human visual characteristics in a trip-and-fall case stemming from a store's parking lot).

English also intends to testify that the walkway where Al-Dahwa tripped and fell does not comply with the ADA, the TAS, and other applicable safety codes. This testimony is relevant to the third element of a premises liability claim—whether AMC failed to take reasonable case to reduce or eliminate the risk. *See Cohen v. Landry's Inc.*, 442 S.W.3d 818, 828 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing expert testimony that "[s]mall abrupt changes in elevation such as that present in the exterior concrete walkway in this matter have long been recognized in the codes, standards, and authoritative safety literature as presenting a serious and unreasonable risk of pedestrian missteps and falls").

Along those same lines, "English's opinion regarding whether [AMC] complied with its duties to reasonably reduce or eliminate the risk of harm presented by [an unlevel walking surface] is directly relevant to an essential element of [Al-Dahwa]'s premises liability claim"—that is, the third element. *Peterson v. HEB Grocery Co.*, No. 13-23-00205-cv, 2024 WL 1203892, at *9 (Tex. App.—Corpus Christi–Edinburg Mar. 21, 2024, pet. filed). Similarly, English's proposed testimony that AMC should have "establish[ed] and implement[ed] a proper safety program to identify, evaluate, and correct hazards with the reasonable potential to cause serious injury" also addresses the third element. Dkt. 19-3 at 9.

All in all, English's opinions in this case are appropriate for a jury to hear. Defense counsel will be given the opportunity to skillfully cross-examine English, and the ultimate weight to be given to English's testimony will be left to the 12 men and women on the jury.

**C.    ENGLISH'S TESTIMONY IS NOT UNFAIRLY PREJUDICIAL**

As a final matter, AMC argues that English's testimony should be excluded under Rule 403 because it "would unfairly prejudice [AMC], confuse the issues, mislead the jury, and improperly bolster [Al-Dahwa's] liability position." Dkt. 19 at 9. In taking this stance, AMC is simply trying to recast its arguments concerning the reliability and relevance of English's opinion through the lens of Rule 403. I have already flatly rejected those arguments.

Although I possess broad discretion to exclude unfairly prejudicial expert testimony under Rule 403, even if relevant, when an expert's opinion satisfies the reliability and relevance standards of Rule 702, an expert should generally be permitted to offer that opinion to the trier of fact. Rarely, if ever, should an expert witness be precluded from testifying at trial under Rule 403 solely because there is a concern that the jury will give undue credence to the expert's opinion. *See Hernandez v. City of Albuquerque*, No. CIV 02-0333, 2004 WL 5522847, at *9 (D.N.M. Jan. 23, 2004) ("Once the proponent of an expert meets the threshold requirements of expertise, reliability, relevance, and helpfulness, the Court should generally admit the evidence. It is . . . difficult for the Court to find that testimony will assist the trier of fact under *Daubert* because it is both relevant and reliable, and then find the evidence is too prejudicial and will lead to jury confusion."). Accordingly, I will not use Rule 403 as a basis to exclude English's testimony.

## CONCLUSION

For the reasons discussed above, the Motion to Exclude is **DENIED**.

SIGNED this 11th day of July 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE